**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

LADELL MAGGETT                                                  PETITIONER

v.                                                    No. 4:19CV130-SA-JMV

SCOTT MIDDLEBROOKS, ET AL.                                  RESPONDENTS

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* petition of Ladell Maggett for a writ of *habeas corpus* under 28 U.S.C. § 2254. The State has answered the petition; the petitioner has filed a traverse, and the State has responded to the traverse. The matter is ripe for resolution. For the reasons set forth below, the instant petition for a writ of *habeas corpus* will be denied.

***Habeas Corpus* Relief Under 28 U.S.C. § 2254**

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section14 of the Judiciary Act of 1789. *Habeas corpus* principles developed over time in both English and American common law have since been codified:

> The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the 1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the

writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus*.

*Id*. Under 28 U.S.C. § 2254, a federal court may issue the writ when a person is held in violation of the *federal* Constitution or laws, permitting a federal court to order the discharge of any person held by a *state* in violation of the supreme law of the land. *Frank v. Mangum*, 237 U.S. 309, 311, 35 S. Ct. 582, 588, 59 L. Ed. 969 (1915).

### Facts and Procedural Posture

Ladell Maggett ("Maggett" or "Petitioner") is currently in the custody of the Mississippi Department of Corrections ("MDOC") and housed at the Wilkinson County Correctional Facility in Woodville, Mississippi. On November 12, 2014, a jury convicted Maggett of capital murder (Count I) and possession of a firearm by a convicted felon (Count II) in the Second Judicial District Circuit Court of Bolivar County, Mississippi, Cause No. 2012-094-CR2. *See* State Court Record ("SCR"), Cause No. 2015-KA-00215-COA, Vol. 5, pp. 37-40.[1] The trial court sentenced Maggett to serve a term of life without the possibility of parole on Count I and a term of ten (10) years on Count II, under the supervision and control of the MDOC. *Id*.

On December 19, 2015, Maggett appealed his convictions and sentences to the Mississippi Supreme Court, raising the following eight issues, as stated by appellate counsel:

I.  Whether the trial court erred in not allowing appellants to impeach Christopher Anderson's testimony with two prior felony convictions.

II. Whether the trial court committed reversible error in overruling appellants' motion for severance of parties and severance of counts.

---

[1] References to the state court record from Maggett's direct appeal of his convictions and sentences are designated as "SCR" with the appropriate volume and page number.

III.    Whether the indictment charging appellants with capital murder violated appellants' rights not to be placed in jeopardy twice by not identifying the victim in the underlying felony of kidnapping.

IV.    Whether the trial court committed reversible error in not allowing appellant to question Christopher Anderson with statements made by Tresten Chatman and to question Tresten Chatman with statements made by Christopher Anderson.

V.    Whether the trial court committed reversible error in denying appellants' motion for a directed verdict of acquittal at the close of the [S]tate of Mississippi['s] case in chief, and denial of motion for judgment of acquittal notwithstanding the verdict or motion for new trial.

VI.    Whether the trial court committed reversible error in denying the admission into evidence the cellphone records of Appellant Maggett, Christopher Anderson and the cellphone records of Henry Boyles, Sabrina Chatman and Donnis Chatman.

VII.    Whether the conduct of the prosecutor lead to appellants not receiving a fair trial.

VIII.    Whether the [S]tate of Mississippi knowingly allowed Christopher Anderson to testify falsely.

SCR, Cause No. 2015-KA-00215-COA, Brief of Appellants.[2]

On December 13, 2016, the Mississippi Court of Appeals affirmed Maggett's convictions and sentences. *Maggett v. State*, 230 So. 3d 722 (Miss. Ct. App. 2016), *reh'g denied*, April 25, 2017, *cert. denied*, Nov. 16, 2017. In affirming Maggett's convictions and sentences, the Mississippi Court of Appeals first addressed the issues raised by appellate counsel, holding that Rule 609(a) of the Mississippi Rules of Evidence ("Miss. R. Evid.") applies to convictions less than ten (10) years old; therefore, since Christopher Anderson's convictions were more than ten (10) years old and fell under the purview of Rule 609(b), the trial court did not abuse its discretion in its ruling disallowing testimony regarding the prior convictions. *Maggett*, 230 So. 3d at 727.

The appellate court further concluded that the trial court did not commit reversible error in

---

[2] Petitioner's counsel filed a joint Appellant's Brief with Maggett's co-defendant, Jerry Undre Stewart, on direct appeal.

overruling Maggett's motion for severance of parties and severance of counts. "This argument fails because the doctrine of retroactive misjoinder can only apply when one of the counts has been vacated or otherwise found to be invalid, and the appealing defendant was prejudiced by being tried on the supported and unsupported allegations together." *See Williams v. State*, 37 So. 3d 717, 725-26 (Miss. Ct. App. 2010). This scenario did not occur, as the court affirmed both counts for all of the defendants. *Id*.

Maggett also claimed that the indictment charging him with capital murder placed him in double jeopardy by not identifying the victim in the underlying felony of kidnapping. The court noted that this objection was not raised before the trial court, and non-jurisdictional defects may not be attacked for the first time on appeal, absent a showing of cause and actual prejudice. *Id*. at 728. As upholding the jury's verdict would not sanction an unconscionable injustice, the court denied relief on this issue. *Id*.

The state appellate court also discussed Maggett's claims that the trial court committed reversible error by not allowing him to question co-defendant Christopher Anderson ("Anderson") with statements made by co-defendant Tresten Chatman ("Chatman") and *vice versa*. The appellate court found these claims to be without merit, as witnesses for the State are not party opponents under the hearsay exception in MRE Rule 801(d)(2). *Id*. at 729.

The appellate court further concluded that the trial court did not commit reversible error in denying Maggett's motion for directed verdict at the close of the State's case in chief and in the denial of Maggett's motion for judgment notwithstanding the verdict or motion for new trial. As the court held:

> The record reflects that Chatman and Anderson were thoroughly cross-examined on their initial denials and on the inconsistencies between their testimonies at trial. The jury was also properly instructed that it should view the testimony of accomplices with 'great care and caution,' and it still elected to convict. We cannot find the convictions

here to be unsupported by sufficient evidence.

*Id*. at 730.

The appellate court then addressed Maggett's challenge to the trial court's refusal to admit certain cellphone records into evidence. While the trial court refused to admit the records because they were not authenticated, Maggett argued that, even if the records are not self-authenticating, they would have been admissible under the "catch all" hearsay exception found in MRE Rule 803(24). *Id*. at 732. The appellate court found, however, that hearsay exceptions and authentication are separate issues; thus, there was no error in the exclusion of the phone records as unauthenticated. *Id*.

The appellate court also addressed Maggett's argument that he did not receive a fair trial as the result of prosecutorial misconduct, particularly during the State's closing arguments. However, the Mississippi Court of Appeals found that no objections were made to questions or statements during the closing arguments of the State, and, as such, these issues were waived and barred on appeal. *Id*.

Finally, the Mississippi Court of Appeals found that Maggett's claim alleging prosecutorial misconduct in allowing co-defendant, Christopher Anderson, to testify "falsely" was wholly without merit as "[t]his contention is based on a purported guilty plea transcript that is not found in the record, and we cannot consider evidence outside the record." *Id*. at 733.

On December 13, 2018, Maggett, *pro se*, filed a "Motion for Leave to Proceed in the Trial Court with a Petition for Post-Conviction Relief" ("Petition for Post-Conviction Relief") in the Mississippi Supreme Court, Cause No. 2018-M-01727, raising the following issues, repeated here verbatim:

**Ground One**: That the [S]tate violated Maggett's 14th Amendment Due Process rights when it failed to correct the false testimony of its two principal witnesses, Chatman and Anderson.

**Ground Two**:  That Maggett was deprived of his 14th Amendment Due Process right to effective assistance of counsel on direct appeal when counsel failed to add Anderson's guilty plea transcript to the appellate record.

**Ground Three**:  That Maggett was deprived his fundamental and constitutional right to effective assistance of counsel when trial counsel failed to give the [S]tate notice that Maggett intended to introduce phone records as self-authenticating records.

**Ground Four**:  That the [S]tate violated Maggett's fundamental and constitutional due process right to a fair trial when it personally vouched for the credibility of its two principal witnesses, Chatman and Anderson.

**Ground Five**:  That Maggett's 14th Amendment Due Process right to confront the witness, Anderson, against him was violated when the trial court denied admissibility of Anderson's prior felony convictions.

**Ground Six**:  That Maggett's fundamental and constitutional due process right to a fair trial was violated when the trial court knowingly allowed the [S]tate to knowingly sponsor false testimony.

**Ground Seven**:  That Maggett was deprived his fundamental and constitutional right to a fair trial when the [S]tate was allowed to ask improper questions during trial and make impermissible and extremely prejudicial comments during closing arguments.

SCR, Cause No. 2018-M-01727, Misc. Case Folder, pp. 10-51.

The Mississippi Supreme Court denied Maggett's Petition for Post-Conviction Relief on April 10, 2019.  *See* Exhibit B.  Regarding Maggett's claims challenging the weight of the evidence and exclusion of evidence, the court found the issues to be barred from further review, as they were addressed on direct appeal.  *Id.* (citing Miss. Code Ann. § 99-39-21(3).  The court then noted that "[m]any of Maggett's prosecutorial misconduct claims also were raised on appeal and are now barred from review.  The remaining claims were capable of being raised on appeal, and Maggett's failure to raise the issues waives them.  Miss. Code Ann. § 99-39-21(1)."  *Id.*  The court also found that Maggett failed to meet any recognized exception to the procedural bars.  *Id.*  Finally, the panel found that Maggett's allegations of ineffective assistance of counsel failed to meet the standard set forth in *Strickland v. Washington* and were thus without merit.  *Id.*

- 6 -

On August 21, 2019, Maggett, *pro se*, signed the instant Petition, which was filed in this court on August 26, 2019, raising substantially the same claims raised in his Petition for Post-Conviction Relief and direct appeal, restated here verbatim:

**Ground One**:  The trial court infringed upon Maggett's fundamental and constitutional right to confront the witness, Anderson, against him when it erroneously denied admissibility of Anderson's prior convictions on the grounds that the convictions were more prejudicial than probative.

**Ground Two**:  The State violated Maggett's 14th Amendment due process rights when it failed to correct the false testimony of is two principal witnesses, Chatman and Anderson.

**Ground Three**:  Maggett was deprived [of] his 14th Amendment due process right to effective assistance of counsel on direct appeal when appellate counsel failed to add Anderson's guilty plea transcripts to the appellate records.

**Ground Four**:  That Maggett was deprived his fundamental and constitutional right to effective assistance of counsel when trial counsel failed to give the State notice that Maggett intended to introduce phone records as self-authenticating records.

**Ground Five**:  The State violated Maggett's fourteenth amendment right to due process of law when it personally vouched for the credibility of its two most important witnesses, Chatman and Anderson.

**Ground Six**:  Maggett's fundamental and constitutional due process right to a fair trial was violated when the trial court knowingly allowed the State to sponsor false testimony.

**Ground Seven**:  That Maggett was deprived his fundamental and constitutional right to a fair trial when the State was allowed to ask improper questions during trial and make impermissible and extremely prejudicial comments during closing arguments.

**Ground Eight**:  The indictment charging Maggett with capital murder violated Maggett's rights to not be placed in jeopardy twice by not identifying the victim of the underlying felony of kidnapping.

**Ground Nine**:  The trial court committed reversible error in denying Maggett's motion for a directed verdict of acquittal at the close of the State of Mississippi's case in chief, and denial of motion for judgment of acquittal notwithstanding the verdict or motion for new trial.

**Ground Ten**:  That the trial court committed reversible error in not allowing Maggett to question Anderson with statements made by Chatman, and vice versa.

- 7 -

**Ground Eleven**: That the trial court committed reversible error in overruling Maggett's pre-trial motion for severance of parties and severance of counts.

**Ground Twelve**: The cumulative effect of the numerous instances of prosecutorial misconduct along with the trial court's errors, augmented by trial counsel's deficient performance throughout Maggett's trial, rendered Maggett's trial fundamentally unfair.

*See* ECF doc. 1.

### All Grounds Reviewed on the Merits in State Court

The Mississippi Supreme Court has already considered all the petitioner's grounds for relief on the merits and decided those issues against the petitioner; hence, these claims are barred from *habeas corpus* review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless they meet one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* (emphasis added). The first exception, subsection (d)(1), applies to questions of law. *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000). The second exception, subsection (d)(2), applies to questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). Since the petitioner's claims challenge both the application of law and the finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable*

*application* of, clearly established Federal law." *Id.* (emphasis added). A state court's decision is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000). A state court's decision involves an *unreasonable application of* federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable. *Id.* at 1521. As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably determined the facts in light of the evidence presented, or that the court's decision contradicted federal law. Accordingly, the exception in subsection (d)(1) does not apply to the grounds in the instant petition.

Nevertheless, under § 2254(d)(2) these grounds may still merit review if those facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented. Because the supreme court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As discussed below, the petitioner has failed to meet this burden; as such, he cannot use subsection (d)(2) to move these claims beyond § 2254(d), which bars from *habeas corpus* review issues already decided on the merits.

The Mississippi Court of Appeals summarized the facts of this case:

> ¶ 2. The prosecution was built on the testimony of two accomplices turned State's witnesses, Tresten Chatman and Christopher Anderson. There were some differences in their accounts, but both agreed that McKay and Chatman had arranged for Stewart to buy a kilogram of cocaine from an associate of McKay's in Memphis, and the cocaine turned out to be mostly baking soda. On the way back from the exchange, Stewart summoned Anderson, Maggett, and Taylor for assistance. McKay's hands

were bound, and he was given a phone and told to get the money back. After McKay could not do it, they took him to a remote location, where Chatman was ordered to shoot McKay or be killed himself. Chatman fired one or more shots, followed by Maggett, and depending on the account, Taylor.

¶ 3. Chatman testified that his family had been threatened if he talked. But Chatman was soon arrested, and after initial denials, he implicated Stewart, Taylor, and Anderson – and, eventually, Maggett. Anderson's account agreed in most respects, but he, like Chatman, appeared to minimize his own culpability.

¶ 4. Stewart testified in his own defense. He admitted to being involved in the drug deal, but according to him, his role was just to drive the vehicle. Anderson and Stewart's brother were the real purchasers of the cocaine. Stewart claimed that he parted ways with Chatman, Anderson, and McKay after returning from the drug deal, with the implication that the State's witnesses had murdered McKay and were trying to pin it on him. Stewart and Maggett also produced alibi witnesses who claimed to have been with them at the time of the killing.

*Maggett*, 230 So. 3d at 726.

## Grounds One and Ten: Evidentiary Rulings of the Trial Court

In Grounds One and Ten, Maggett generally argues that the trial court abused its discretion in its rulings on evidence. *See generally* ECF doc. 1. In addition, Maggett argues that the trial court infringed upon his fundamental and constitutional right to confront one of the State's witnesses. *Id*. He raised these issues on direct appeal and on post-conviction review, and the Mississippi Court of Appeals and Mississippi Supreme Court denied Maggett relief in both instances. *See* Exhibits A and B. As discussed below, the Mississippi Supreme Court's denials of these claims were neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

In Ground One, Maggett alleges that the trial court:

…infringed upon [his] fundamental and constitutional right to confront the witness, Anderson, against him when it erroneously denied admissibility of Anderson's prior convictions on the grounds that the convictions were more prejudicial than probative.

*See* ECF doc. 1, p. 19. Additionally, in Ground Ten, Maggett alleges that the trial court:

- 10 -

…committed reversible error in not allowing Maggett to question Anderson with statements made by Chatman, and vice versa.

*See* ECF doc. 1, p. 42. As stated in its opinion, the Mississippi Court of Appeals outlined the court's denial of Maggett's allegations:

¶ 9. This authority is simply inapposite, as Rule 609(a) applies to convictions less than ten years old, and Anderson's convictions were more than ten years old. Rule 609(b) applies to convictions over ten years of age, stating:

(b)     Limit on Using the Evidence After 10 Years: This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:

(1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and

(2) the proponent gives an adverse party reasonable written notice of intent to use it so that the party has a fair opportunity to contest its use.

The record reflects that the trial court properly considered this issue under Rule 609(b). No abuse of discretion has been shown.

*Maggett*, 230 So. 3d at 727.

He again raised this issue, as it pertains to Ground One[3], in his Petition for Post-Conviction Relief, with the Mississippi Supreme Court finding that the claim was "addressed on direct appeal and, thus, [] barred from further review." *See* Exhibit B.

As mentioned above, in Ground One[4], Maggett claims that he was not allowed to confront Anderson when the trial court denied admissibility of Anderson's two prior felony convictions. In all

---

[3] Ground Ten was raised only in Maggett's direct appeal to the Mississippi Court of Appeals, not in his Petition for Post-Conviction Relief.

[4] Maggett merely lists Ground Ten without any argument or explanation. *See* ECF doc. 1, p. 42. He simply makes a statement of the allegation and its procedural history within the Mississippi Court of Appeals. The court has liberally construed this claim and discussed it as fully as possible. Maggett references an "accompanying Memorandum of Law;" however, the court has not located it in the record.

- 11 -

criminal prosecutions, state as well as federal, the accused has a right, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, "to be confronted with the witnesses against him." U.S. Const., Amdt. 6; *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) (applying Sixth Amendment to the States).

"The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). "Confrontation Clause violations are subject to harmless error analysis." *Fratta v. Quarterman*, 536 F.3d 485, 507-508 (5th Cir. 2008), *see also Horn v. Quarterman*, 508 F.3d 306, 322 n. 24 (5th Cir. 2007)(citations omitted); *Delaware v. Van Arsdall,* 475 U.S. 673, 684, (1986).

The test for a determination of whether the error was harmless in a federal *habeas corpus* case is "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Fratta,* 536 F.3d at 508 (quoting *Kotteakos v. United States,* 328 U.S. 750, 776 (1946)). Maggett was not denied the right to confront the witness; instead, the trial court followed Mississippi's rules of evidence and excluded testimony regarding old convictions. In addition, Maggett has not shown that the trial court's ruling resulted in a substantial or injurious effect or otherwise had any influence on the jury's verdict.

In Ground Ten Maggett claims that, in its ruling on a pretrial motion, the trial court committed reversible error by not allowing him to question co-defendant Christopher Anderson with statements made by co-defendant Chatman and *vice versa*. The trial court held that the statements were "hearsay and not subject to any exception." *Maggett*, 230 So.3d at 729. The appellate court agreed, holding that witnesses for the State are not party opponents under the hearsay exception in Miss. R. Ev. 801(d)(2). *Maggett*, 230 So. 3d at 729. The statements were nonetheless presented to the jury, as the

trial court permitted "the defendants to use the statements extensively in impeaching Anderson and Chatman, including allowing the defendants to play nearly the entire recordings for the jury." *Id*. This claim is thus without substantive merit.

Maggett has presented nothing in his petition to overcome the deference afforded to the findings of fact made by the state appellate court. *See* 28 U.S.C. § 2254(e)(1). As such, the state court's decision was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. In addition, Maggett has not shown that the state court decision was an unreasonable determination of the facts in light of the evidence presented. *See Williams v. Taylor, supra*. For these reasons, Maggett is not entitled to federal *habeas corpus* relief on his claims in Grounds One and Ten of the instant Petition.

### Grounds Two, Five, Six and Seven: Prosecutorial Misconduct

In Grounds Two, Five, Six and Seven, Maggett argues that the State violated his Fourteenth Amendment Due Process rights by allowing alleged false testimony of its witnesses (Chatman and Anderson) and by making certain statements during the closing argument. *See generally* ECF doc. 1. He raised these issues on direct appeal and on post-conviction review, and the Mississippi Court of Appeals and Mississippi Supreme Court denied relief in both instances. *See* Exhibits A and B. The appellate courts' denial of Maggett's claims was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

### Grounds Two and Six: Conflicting Testimony of Witnesses

In Ground Two and Ground Six, Maggett argues that the State "failed to correct the false testimony" of Chatman and Anderson. *See* ECF doc. 1, p. 21. The two witnesses offered conflicting testimony regarding who shot the victim and how many times each shooter fired. Chatman testified that he fired the first shot under duress, then handed the revolver to Kelvin Taylor, who fired two more

shots. Tr. Vol. X at 621-622. Anderson, however, testified that Chatman fired the revolver four or five times, and Taylor never fired a shot. Tr. Vol. XIV at 1138. Mr. Maggett argues that one of the witnesses must have been lying, and the prosecutor erred for not sorting out this discrepancy before putting on the two witnesses.

Similarly, Chatman testified that Anderson came to Stewart's home after Anderson, Chatman, and McKay returned from conducting a drug deal in Memphis – and that upon arrival, Anderson opened the package and discovered that the drugs inside were mixed with white powder. Tr. Vol. XI at 602. Anderson, however, testified that he did not enter Stewart's home on the night in question. Tr. Vol. XII at 1036. Again, Mr. Maggett argues that one of these witnesses was lying because their accounts of events cannot be reconciled. In addition, at Anderson's change of plea hearing, the prosecutor set forth the facts the State intended to prove should the case go to trial, including that, upon arriving in Clarksdale after conducting the Memphis drug deal, "Kelvin Taylor, who is another codefendant and possibly Mr. Anderson arrived at [Mr. Stewart's] house." Doc. 2-1 at 141. Again, Mr. Maggett argues that Chatman's version of events cannot be reconciled with Anderson's; thus, one on them must be lying.

The Mississippi Court of Appeals summarized the argument:

¶ 38. Maggett and Stewart complain that the prosecutors allowed Anderson to testify that he had not gone to Stewart's house at a certain point, after he supposedly admitted he had done so when he plead guilty to charges relating to the incident. This contention is based on a purported guilty plea transcript that is not found in the record, and we cannot consider evidence outside the record. *Galloway v. State*, 122 So. 3d 614, 638 (¶ 51) (Miss. 2013). Consequently[,] we find this claim to be without merit.

*Maggett*, 230 So. 3d at 733. Maggett again raised this issue in his Petition for Post-Conviction Relief, with the Mississippi Supreme Court finding that the claims "were capable of determination at trial and/or on direct appeal," and that Maggett "raised [them] on appeal and [they are] now are barred from review." *See* Exhibit B.

A court must review a claim of prosecutorial misconduct in two steps. First, the court must decide whether the prosecutor made an improper remark. *United States v. Munoz*, 150 F. 3d 401, 414 (5th Cir. 1998). If the prosecutor made an improper remark, the court must evaluate whether the remark affected the substantial rights of the defendant. *Id*. at 415; *Garza*, 608 F. 2d at 663. In reviewing whether statements made by a prosecutor were improper, the court must look at them in context. *United States v. Washington*, 44. F. 3d 1271, 1278 (5th Cir. 1995). Nothing in the record supports Maggett's contention that the prosecutor made improper remarks.

These arguments are also without substantive merit. It is common for witnesses to give conflicting testimony, which can arise either from mistake or dishonesty. The court does not determine credibility of witnesses or decide facts in a jury trial. The jury, the finder of fact, must sift through the testimony, determine the credibility of the witnesses, weigh the evidence, and render a verdict. The Founders established in our Constitution that an accused has the right to a trial by jury in a criminal case. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, *by an impartial jury* of the State and district wherein the crime shall have been committed...." U.S. Const. amend. VI. (emphasis added). The requirement of a jury trial in a criminal case is applicable to the states through the Fourteenth Amendment. *Duncan v. Louisiana*, 391 U.S. 145, 156 (1968). It is the province of the jury to determine the facts in a criminal case – and apply those facts to the law given by the court through jury instructions. Indeed, "[j]uries are typically called upon to render unanimous verdicts on the ultimate issues of a given case." *McKoy v. North Carolina*, 494 U.S. 433, 449, 110 S. Ct. 1227, 1236, 108 L. Ed. 2d 369 (U.S. 1990) (plurality opinion) (Blackmun, J., concurring). The jury in this case carried out its duty and rendered a verdict of guilty as to Mr. Maggett. This ground for relief is without substantive merit.

**Ground Five: Prosecution Vouching for the Credibility of Witnesses**

The State's case rested almost entirely on the testimony of two accomplice witnesses:

Chatman and Anderson. During closing argument, the prosecutor stated:

> And I submit to you that what we wanted to hear and what we wanted them to tell was the truth. They want to believe that there was something underhanded or something mighty suspicious going on because both of them said part of my deal, part of my obligation was that I had to come in here and testify truthfully. That is part of what they had to do. *And they came here and testified truthfully.*

Tr. Vol. VII at 1584 (emphasis added). Mr. Maggett argues that the highlighted part of the

prosecutor's statement was "improper bolstering" of the witnesses' testimony, rendering the resulting

conviction "fundamentally unfair." Doc. 1 at 27. During Mr. Maggett's pursuit of post-conviction

collateral relief, the Mississippi Supreme Court found this claim to be procedurally barred, holding

that "the claims were 'capable of determination at trial and/or direct appeal'" – and that he had not

shown cause and actual prejudice to overcome the bar. Exhibit B.

In any event, this claim fails on the merits. As set forth above, review of a charge of

prosecutorial misconduct involves two steps. First, a court must decide whether the prosecutor made

an improper remark. *See United States v. Fields,* 72 F.3d 1200, 1207 (5th Cir.), *cert. denied,* 519 U.S.

807, 117 S.Ct. 48, 136 L.Ed.2d 13 (1996). During cross-examination, no misconduct can arise from a

question asked for a valid reason. *See United States v. Swanson,* 9 F.3d 1354, 1359 (8th Cir. 1993).

During closing argument, the prosecutor "may not personally vouch for the credibility of a

government witness, as doing so may imply that [she] ... has additional personal knowledge about the

witness and facts that confirm the witness' testimony, or may add credence to such testimony." *United*

*States v. Washington,* 44 F.3d 1271, 1278 (5th Cir.), *cert. denied,* 514 U.S. 1132, 115 S.Ct. 2011, 131

L.Ed.2d 1010 (1995). A prosecutor is not, however, "prohibited from 'recit[ing] to the jury those

inferences and conclusions [s]he wishes [the jury] to draw from the evidence so long as those

inferences are grounded upon evidence.'" *Id.* The prosecutor "may even present what amounts to be a bolstering argument *if it is specifically done in rebuttal to assertions made by defense counsel in order to remove any stigma cast upon [her] ... or [her] ... witnesses.*" *United States v. Dorr,* 636 F.2d 117, 120 (5th Cir. Unit A Feb. 1981) (emphasis added).

During closing arguments, each of the three defense attorneys argued and insinuated that Maggett's accomplices, Chatman and Anderson, lied during their testimony as a reward for implicating Maggett (and others) – for which they negotiated plea agreements with the State. *See, e.g.*, 1531, 1540-42, 1554-1560. In response, the prosecutor summarized the evidence and testimony in detail to argue that Chatman and Anderson were telling the truth. Tr. Vol. 17 at 1563-1584. Thus, as the prosecutor offered her argument "in rebuttal to assertions made by defense counsel in order to remove any stigma cast upon [her] … or [her] … witnesses," her argument is permissible. *See Dorr, supra.* Hence, Mr. Maggett's claim regarding the prosecutor's witness bolstering statement during closing arguments is without substantive merit.

### Ground Seven: Prejudicial Comments During Examination of Witnesses and During Closing Arguments

Further, in Ground Seven, Maggett alleges that the State made "impermissible and extremely prejudicial comments during closing arguments." *See* ECF doc. 1, p. 29. When the prosecutor's remarks during closing argument are both inappropriate and harmful, a defendant may be entitled to a new trial. *United States v. Simpson*, 901 F. 2d 1223, 1227 (5th Cir. 1990), *cert. denied*, 510 U.S. 983 (1993). The prosecutor's improper remarks standing alone, however, are insufficient to overturn a criminal conviction. *United States v. Young*, 470 U.S. 1, 11 (1985). Instead, the defendant must show that the prosecutor's remarks affected his substantial rights. *Simpson*, 901 F. 2d at 1227. To make this determination, a court must

> examine (1) the magnitude of the statement's prejudice, (2) the effect of any
> cautionary instructions given, and (3) the strength of the evidence of the defendant's
> guilt.

*Id*; *United States v. Lowenberg*, 853 F. 2d 295, 302 (5ᵗʰ Cir. 1988). "Criminal convictions are not to

be lightly overturned on the basis of a prosecutor's comments standing alone." *United States v.*

*Pineda-Ortuno*, 952 F. 2d 98, 106 (5ᵗʰ Cir.), *cert. denied*, 504 U.S. 928 (1992). As such, "[a] criminal

defendant bears a substantial burden when attempting to show that prosecutorial improprieties

constitute reversible error." *United States v. Bermea*, 30 F. 3d at 1563. "A conviction should not be

set aside if the prosecutor's conduct…. did not in fact contribute to the guilty verdict and was,

therefore legally harmless." *United States v. Johnston*, 127 F. 3d 380, 390 (5ᵗʰ Cir. 1997), *cert. denied*,

522 U.S. 1152 (1998).

Maggett identifies ten instances of alleged misconduct of the prosecutor during examination of

witnesses or during closing arguments:

(1) The State inferred during cross-examination of Charkita Primer that living with Stewart caused her children to fail in school;

(2) The State suggested that the jury disregard Anderson's alleged lie about not going to Stewart's home;

(3) The State suggested that Stewart lied to the jury about the type of documentation he used to rent a car from Enterprise;

(4) The State suggested during closing that Stewart made up the fact about leaving his house keys with Anderson to concoct a reason for Anderson to return to Stewart's home;

(5) Though Stewart testified during cross-examination that his business was a restaurant, rather than a night club, the State referred to the business as a night club during closing arguments;

(6) The State incorrectly told the jury during closing that the crime scene analyst had testified that the duct tape on McKay's wrist was not from the same roll as the duct tape on the driver's side window;

(7) The State, during closing arguments, improperly bolstered the testimony of Chatman and Anderson by saying that they "came here and testified truthfully;"

(8) The State told the jury during closing that Stewart is the one who grabbed the phone from McKay and told Marcus Dockery "if I don't get my money back, you're going to find this bitch dead on a country road;"

(9) The State asked the jury during closing arguments to put themselves in the position of Anderson and Chatman (the "golden rule argument;")

(10) The State suggested during closing arguments that Charkita Primer (Stewart's girlfriend) had lied about moving on with her life because she showed up at his trial to testify several days after giving birth and stayed in the courtroom after giving testimony.

Mr. Maggett argues that when the prosecutor cross-examined Stewart, there were two instances where the State asked questions with no factual basis. Once (example one, above), the prosecutor asked if his children had been failing in school "because they were living in the house with [him]." Tr. 1383-1384, Vol. 16. In example five above, the prosecutor asked him whether he had a night club, and he answered, "No ma'am." Tr. 1385, Vol. 16. Maggett argues that these questions caused the jury to believe that Stewart was a poor influence on his children and that he was untruthful in his denial of owning a night club – and thus that Stewart was a bad person who had little credibility. The Mississippi Court of Appeals found the questioning to be improper, but denied the claims because: (1) the issues "were waived and are procedurally barred on appeal," (2) "[t]he jury was properly instructed that remarks of counsel were not evidence and that it should disregard statements that were not based in evidence," and (3) the remarks did not "create an unjust prejudice against the accused" such that the jury's decision was influenced by that prejudice. *Maggett,* 2015-KA-00215-COA at 14-15. Taking these remarks in context, and considering that the court instructed the jury that counsel's remarks are not evidence, the remarks did not affect Maggett's substantial rights. This ground for relief is without merit.

In addition, none of the prosecutor's actions rose to the level of prosecutorial misconduct. The court discussed examples two and four above the section analyzing Grounds Two and Six. The court likewise discussed example seven in the section analyzing Ground Five. Regarding the remaining

examples, as the term "closing arguments" suggests, counsel is permitted to make inferences from the evidence and present argument to the jury during closing. That is what counsel did in Mr. Maggett's examples. A review of the record does not indicate that his trial counsel objected to any alleged misconduct on behalf of the State during closing arguments. Hence, the Mississippi Supreme Court's denial of this claim of prosecutorial misconduct was neither contrary to, nor an unreasonable application of, clearly established federal law. As such, the petitioner is not entitled to federal *habeas corpus* relief on his claims in Grounds Two, Five, Six and Seven of the instant Petition.

### Grounds Three and Four: Ineffective Assistance of Counsel[5]

In Grounds Three and Four, Maggett alleges that his trial and appellate counsel provided ineffective assistance under *Strickland v. Washington*. ECF doc. 1. As mentioned above, Maggett previously alleged ineffective assistance of trial and appellate counsel in his direct appeal and Petition for Post-Conviction Relief, raising substantially the same claims raised in the instant petition. The Mississippi Supreme Court denied Maggett's claims of ineffective assistance of counsel, finding that he did not meet the standard as set out in *Strickland*, *supra*, and that his claims were without merit. *See* Exhibit B. As such, the state appellate court's denial of the issues raised in Maggett's Petition for Post-Conviction Relief is a reasonable application of clearly established federal law.

The court must address claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove that defense counsel was ineffective, the petitioner must show that counsel's performance was deficient and that the deficiency resulted in prejudice to her defense. Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that he was not functioning as the

---

[5] Maggett's grounds for *habeas corpus* relief set forth in ECF doc. 1 are both repetitive and convoluted. The court has thus grouped them together, according to topic, for the sake of brevity and clarity.

"counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997). "When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011); *Premo v. Moore*, 131 S.Ct. 733 (2011).

As stated above, the Mississippi Supreme Court denied each of Maggett's claims of ineffective assistance of counsel on post-conviction review because his "claims … do not meet the requisite prongs of deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)." *See* Exhibit B. Under the AEDPA, the question is "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Richter*, 131 S.Ct at 778; *Premo*, 131 S.Ct. at 740. A federal *habeas corpus* petitioner "must demonstrate that it was necessarily unreasonable for the [state] Supreme Court" to rule as it did. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011) (citing *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1418, n.2 (2009)). As discussed below, the Mississippi Supreme Court's decision rejecting Maggett's claims of ineffective assistance of counsel did not involve an unreasonable application of *Strickland*.

**Ground Three: Maggett was deprived his right to effective assistance of counsel on direct appeal when appellate counsel failed to add Anderson's guilty plea transcripts to the appellate records.**

Maggett argues that he was deprived right to effective assistance of appellate counsel for failing to add the guilty plea transcript of co-defendant Anderson to the record in his appeal. *See* ECF doc. 1, p. 23. He previously raised this claim in his Petition for Post-Conviction Relief, and the Mississippi Supreme Court found it to be without merit. *See* Exhibit B. "To meet the prejudice prong of the *Strickland* test, the [petitioner] may not simply allege but must 'affirmatively prove' prejudice." *Bonvillain v. Blackburn*, 780 F.2d 1248, 1253 (5th Cir. 1986), *cert. denied*, 476 U.S. 1143 (1986) (citing *Celestine v. Blackburn*, 750 F.2d 353, 356 (5th Cir. 1984)). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S.Ct. at 792. Mere speculation and conjecture cannot establish the prejudice prong, and conclusory allegations are not sufficient to obtain *habeas corpus* relief. *Bradford v. Whitley*, 953 F.2d 108, 1012 (5th Cir. 1992); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990). Moreover, Maggett must prove both that the outcome of his trial would have been different "but for counsel's alleged errors" – and that "the result of the proceedings was fundamentally unfair or unreliable." *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995) (citing *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)); *Sharp v. Johnson*, 107 F.3d 282, 286, n.9 (5th Cir. 1997).

Conclusory ineffective assistance of counsel claims do not merit federal *habeas corpus* relief. *See, e.g.*, *Collier v. Cockrell*, 300 F.3d 577, 587 (5th Cir. 2002) ("This Court has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal *habeas* proceeding.") (citing *Miller*, 200 F.3d 274 at 282). Indeed, "counsel has wide latitude in deciding how best to represent a client...." *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003). When deciding whether counsel's performance was deficient, a reviewing court "must indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 688-89. Counsel's strategic choices, made after a thorough investigation of the law and facts relevant to plausible options, are virtually unchallengeable. *Strickland*, 466 U.S. at 673; *Pape v. Thaler*, 645 F.3d 281, 289-90 (5th Cir. 2011).

In reviewing the performance of appellate counsel, the two-pronged test of *Strickland* applies. *See Evitts v. Lucey*, 469 U.S. 387, 397-399 (1985). Appellate counsel does not have a duty to raise every "colorable" claim on appeal – and thus has broad discretion in determining which issues are more likely to be successful. *Jones v. Barnes*, 463 U.S. 745, 751-754 (1985). In this case, Maggett has offered nothing to support this claim. As such, the Mississippi Supreme Court's denial of this claim of ineffective assistance of appellate counsel was neither contrary to, nor an unreasonable application of, clearly established federal law. This claim of ineffectiveness is without merit.

**Ground Four: Ineffective Assistance of Counsel – Trial counsel failed to give the State notice that Maggett intended to introduce phone records as self-authenticating records.**

In this claim of ineffective assistance of counsel, Maggett alleges his trial counsel was ineffective for failing to give the State notice that he intended to introduce Anderson's cell phone records as self-authenticating. *See* ECF doc. 1, p. 24. That State initially wanted to prove that Maggett became involved in the kidnapping and murder when Anderson called him and told him to come to Stewart's house. Doc. 1 at 24. Maggett's counsel attempted to introduce the records to show that the State's witness (Anderson) had received two calls from Maggett – and that Anderson had not answered the calls. SCR, Vol. 14, pp. 54-60. Anderson had denied (or could not remember) having received the calls. *Id*. Counsel's objectives were thus to use the records to impeach Anderson – and show that Maggett did not become involved in the plot through calls to Anderson. The State objected,

arguing that the records had not been authenticated, and Maggett's counsel argued that the records were self-authenticating. *Id*. The trial court ultimately held that counsel had failed to provide proper notice to the State that he planned to introduce the records as self-authenticating, sustained the State's objection, and disallowed the phone records. *Id*.

The trial judge assisted Maggett's counsel by suggesting that he ask Anderson questions about the calls during cross-examination:

> **The Court:** Anyway, I—on this, I have perused them to see who gave notice, and I didn't see anything along those lines. See if you can ask him some—just through cross-examination of some more stuff, and when we take a break—
>
> **Mr. Shah:** Yes, sir.
>
> **The Court:** —help me understand how I can get those in. We're going to have to circumvent the rule. Because we don't have notice, and we don't have a certificate. So, help me.
>
> **Mr. Shah:** Yes, sir, I will.

*Id*. As a result of that cross-examination, Anderson acknowledged that he received the call from "either [Stewart] or Maggett," thus providing part of the testimony that Maggett's counsel wished to use the records to elicit (that Anderson had not called Maggett; instead, Maggett called Anderson). *Id*. at 82-83. The other evidence the cell phone records might have provided was that Anderson did not answer Maggett's two calls.

Thus, counsel's failure to provide the proper notice prevented the jury from seeing that Anderson did not answer Maggett's calls. That evidence would have bolstered Maggett's argument that he did not become involved with the kidnapping and murder through those two calls. The question then becomes whether the absence of that evidence prejudiced Maggett's defense. To show prejudice, Maggett "may not simply allege but must 'affirmatively prove' prejudice." *Bonvillain, supra*. However, "[t]he likelihood of a different result must be substantial, not just conceivable."

*Richter*, 131 S.Ct. at 792. Mere speculation and conjecture cannot establish the prejudice prong, and conclusory allegations are insufficient to sustain a *habeas corpus* claim. *Bradford v. Whitley*, 953 F.2d 108, 1012 (5th Cir. 1992). Moreover, Maggett must prove both that the outcome of his trial would have been different "but for counsel's alleged errors" – and that "the result of the proceedings was fundamentally unfair or unreliable." *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995) (citing *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)). Maggett has not met this burden, as phone records were not the only evidence the State presented to show that he participated in the crimes. The State's witnesses, Chatman and Anderson, testified that Maggett participated in the crimes. *Maggett*, 230 So.3d at 726. He had alibi witnesses, but the jury chose to believe the State's witnesses.

Maggett has not shown that counsel's failure to provide proper notice of his intent to present the phone records as self-authenticating would have led to a different outcome – or rendered the proceeding fundamentally unfair or unreliable. As such, counsel's representation of his client did not rise to the level of ineffective assistance of counsel under *Strickland, supra*. For these reasons, the Mississippi Supreme Court's denial of this claim of ineffective assistance of trial counsel was neither contrary to, nor an unreasonable application of, clearly established federal law. This claim of ineffectiveness is also without merit.

### Ground Eight:  Sufficiency of Indictment/Double Jeopardy

In Ground Eight, Maggett challenges the sufficiency of his indictment for capital murder. *See* ECF doc. 1, p. 40. He alleges that "[t]he indictment charging Maggett with capital murder violated Maggett's rights not to be placed in jeopardy twice by not identifying the victim of the underlying felony of kidnapping." *Id*. He presented this ground to the Mississippi Court of Appeals on direct appeal, arguing that his indictments for capital murder, "with the underlying crime of kidnapping,

- 25 -

were fatally defective because they failed to explicitly specify that McKay was the victim of the kidnapping as well as the murder." *Maggett*, 230 So. 3d at 728. The Mississippi Court of Appeals denied his claim for relief, finding that he did not raise any objection to the indictments before the trial court, and, as such, non-jurisdictional defects in the indictment may not be attacked for the first time on appeal absent a showing of cause and actual prejudice. *Id.* In addition, the Mississippi Court of Appeals noted that "[i]n capital-murder cases, unless the underlying felony is burglary, the underlying felony that elevates the crime to capital murder must be identified in the indictment along with the section and subsection of the statute under which the defendant is being charged. No further detail is required." *Id.*, citing *Batiste v. State*, 121 So. 3d 808, 836 (Miss. 2013). Because Maggett's indictments were satisfactory under *Batiste*, the Court of Appeals found this issue to be without merit. *Maggett* at 728-29.

First, the court lacks jurisdiction over this issue because, by challenging the sufficiency of his indictment for capital murder, Maggett has not alleged the deprivation of a constitutional right. Maggett's challenge to the indictment for capital murder is strictly a matter of state law and is thus precluded from federal *habeas corpus* review. A state's interpretation of its own laws or rules is no basis for federal *habeas corpus* relief, as no constitutional question is involved. *Bronstein v. Wainwright*, 646 F.2d 1048, 1050 (5th Cir. 1981). The role of a federal court is more limited than that of the state appellate court. *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983). Indeed, a federal court "do[es] not sit as a super state supreme court on a *habeas corpus* proceeding to review error under state law." *Mendiola v. Estelle*, 635 F.2d 487, 491 (5th Cir. 1981). The federal courts hold no supervisory power over state judicial proceedings, and federal *habeas corpus* relief is appropriate only when a conviction has been obtained in violation of a constitutionally protected right. *Smith v. Phillips*, 455 U.S. 209, 221 (1981). A "mere error of state law" is not a denial of due process. *Engle*,

465 U.S. at 121 n.21.

In addition, the sufficiency of a state indictment is not a matter for federal *habeas corpus* review unless it can be shown that the indictment was so defective that the convicting court had no jurisdiction. *Riley v. Cockrell,* 339 F.3d 308, 313-14 (5th Cir. 2003). "State law dictates whether a state indictment is sufficient to confer a court with jurisdiction." *Williams v. Collins,* 16 F.3d 626, 637 (5th Cir. 1994). Rule 14.1 of the Mississippi Rules of Criminal Procedure[6] sets forth the required elements of an indictment under Mississippi law:

> (a)(1) The indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation. Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them.
>
> (2) Other Matters. An indictment shall also include the following:
>
> > (A) the name of the accused;
> >
> > (B) the date on which the indictment was filed in court;
> >
> > (C) a statement that the prosecution is brought in the name and by the authority of the State of Mississippi
> >
> > (D) the county, and in two-district counties, the judicial district in which the indictment is brought;
> >
> > (E) the date and, if applicable, the time at which the offense was alleged to have been committed;
> >
> > (F) the signature of the foreperson of the grand jury issuing it; and
> >
> > (G) The words "against the peace and dignity of the state."
>
> (3) Surplussage. The court, on motion, may strike from the indictment any surplussage, including unnecessary allegations or aliases.

---

[6] The Mississippi Rules of Criminal Procedure were adopted by the Mississippi Supreme Court on December 13, 2016, and became effective on July 1, 2017 (after the events of this case). However, the required elements of an indictment under Mississippi law remain unchanged from the earlier source, Rule 7.06 of the Uniform Rules of Circuit and County Court Practice.

Under Rule 14.1, the indictment must include, *inter alia*, "a plain, concise and definite written statement of the essential facts constituting the offense charged" and must "fully notify the defendant of the nature and cause of the accusation."

The test for resolving the sufficiency of an indictment "involves minimal constitutional standard, not whether a better indictment could have been written." *McKay*, 12 F.3d at 69 (citing *United States v. Chaney*, 964 F.2d 437, 446 (5th Cir. 1992)). To afford notice sufficient to satisfy constitutional requirements, an indictment must include "[t]he essential elements of the offense," but the elements need not be "expressed in any specific terms." *Id*. (citation omitted). Ultimately, "[a]n indictment should be found sufficient unless no reasonable construction of the indictment would charge for the offense for which the defendant has been convicted." *Id*. (citation omitted). These minimum constitutional standards are met where the indictment alleges "every element of the crime charged and in such a way 'as to enable the accused to prepare his defense and to allow the accused to invoke the double jeopardy clause in any subsequent proceeding.'" *United States v. Gonzales*, 436 F.3d 560, 569 (5th Cir. 2006) (internal citations omitted). Finally, as previously noted, if the state court has held that an indictment is sufficient under state law, "a federal court need not address that issue." *McKay*, 12 F.3d at 68 (citations omitted).

Count I of Maggett's indictment charged him with the capital murder of McKay, providing that Maggett:

> did unlawfully, feloniously and without the authority of law and with or without deliberate design to effect death, kill Quenton Deon McKay while the said Kelvin Taylor and/or Jerry Undre Stewart and/or Ladell Maggett, Jr. and/or Tresten Chatman and/or Christopher Anderson, or either of them was/were engaged in the commission of the crime of kidnapping as set forth in the Mississippi Code of 1972, Annotated as amended, Section 97-3-53, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Mississippi

SCR, 2015-KA-00215-COA, Vol. 1, p. 21. At the time of Maggett's trial, Mississippi Code Annotated

section 97-3-19(2)(e) defined capital murder as:

> The killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases: [w]hen done with or without any design to effect death, by any person engaged in the commission of the crime of rape, burglary, kidnapping, arson, robbery, sexual battery, unnatural intercourse with any child under the age of twelve (12), or nonconsensual unnatural intercourse with mankind, or in any attempt to commit such felonies.

Thus, Maggett's indictment informed him of the statutes that he was charged with violating, as well as the required elements of the crimes charged. As the Mississippi Court of Appeals found on direct appeal, Maggett's indictments were adequate under the state law precedent in *Batiste*. *Maggett*, 230 So. 3d at 729. For this reason, the appellate court found no merit to Maggett's argument that his indictment violated his rights to be free from double jeopardy.

As such, Maggett is not entitled to *habeas corpus* relief on Ground Eight challenging the sufficiency of his indictment for capital murder because he has not shown that his indictment was so defective that it deprived the state court of jurisdiction. The state appellate court had jurisdiction to consider this matter, and this claim is not cognizable on federal *habeas corpus* review because Maggett has failed to assert the violation of a constitutional right. In addition, Maggett has not shown that the decision of the Mississippi Court of Appeals regarding the sufficiency of his indictment was contrary to, or an unreasonable application of, clearly established federal law as set forth by the Supreme Court of the United States – or that the decision was based on an unreasonable determination of the facts in light of the evidence. Thus, Maggett has not shown that he is entitled to relief on his claim in Ground Eight of the instant petition.

## Ground Nine: Sufficiency of the Evidence[7]

In Ground Nine, Maggett argues that the trial court committed reversible error in denying his

"Motion for a Directed Verdict of Acquittal at the close of the State of Mississippi's case in chief, and

denial of Motion for Judgment of Acquittal Notwithstanding the Verdict or Motion for New Trial."

*See* ECF doc. 1, p. 41. He also argues that "[t]his error on the part of the trial court warrants the

reversal of [his] convictions, and ordering a new trial because the evidence or lack of evidence was

such that reasonable and fair minded jurors could only find him not guilty." *Id.* First, Maggett is not

challenging the weight of the evidence, but its sufficiency.[8] Though Mr. Maggett did not include a

memorandum in support of his petition, he states that he "raised this issue on direct appeal." *Id.* The

court thus looks to his discussion of the issue in his appellant's brief.

Mr. Maggett argues that his conviction rested solely on the testimony of State's witnesses

Christopher Anderson and Tresten Chatman, with no physical evidence placing him at the scene. Doc.

10-2 at 31-32. He argues that no reasonable person could have found him guilty because the

testimony of the two witnesses had "glaring conflicts." *Id.* at 32. Mr. Maggett then gives several

examples of conflicting testimony. *Id.* at 31-42.

In order to obtain *habeas corpus* relief on a claim that the evidence presented was insufficient

to sustain his conviction, the petitioner must show that, after viewing evidence in the light most

---

[7] Maggett merely states Ground Nine without argument or explanation. *See* ECF doc. 1, p. 41. He simply states the allegation and its procedural history within the Mississippi Court of Appeals. The court has liberally construed this claim and addressed the issue as a challenge to the sufficiency of the evidence. Though Maggett references an "accompanying Memorandum of Law," the court could not find such a memorandum of law in the record.

[8] The weight of the evidence is not an issue within the purview of a federal court on *habeas corpus* review. *See Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985), *cert. denied*, 476 U.S. 1123 (1986) ("A federal *habeas* court has no power to grant *habeas corpus* relief because it finds that the state conviction is against the 'weight' of the evidence….") As such, the court will consider this ground as a challenge to the sufficiency of the evidence.

favorable to prosecution, any rational trier of fact would have found the essential element of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979), *Harris v. Blackburn*, 646 F.2d 904 (5th Cir. 1981). The court must apply the elements of state criminal law in determining whether the evidence presented was sufficient to support the conviction. *Turner v. McKaskle*, 721 F.2d 999 (5th Cir. 1983). However, the standard for determining the distinction between "mere speculation and a reasoned inference" – and thus whether a jury's verdict is reasonable – is based upon federal law. *Coleman v. Johnson*, 566 U.S. 650, 132 S.Ct. 2060 (2012). The *Jackson* test "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Santellan v. Cockrell*, 271 F.3d 190 (5th Cir. 2001), quoting *Herrera v. Collins*, 506 U.S. 390, 402, 113 S.Ct. 853, 861, 122 L.Ed.2d 203 (1993). To make this decision, the court must determine (after reviewing the proof presented in a light most favorable to the prosecution) whether the jury was rational in finding no reasonable doubt as to the defendant's guilt.

In all criminal cases, the jury must weigh the evidence and decide the facts, and the jury did so in this case.[9] A court reviewing the evidence in a criminal case must give great deference to the jury's findings. When "faced with a record of historical facts that supports conflicting inferences[, a court] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326, 90 S.Ct. at 2793. Those inferences *must*, however, be reasonable in light of the proof presented; the fact-finder must "draw *reasonable* inferences from basic facts to ultimate facts." *Id.*, at 319, 99 S.Ct. 2781 (emphasis added). Mere speculation is never sufficient to establish proof beyond

---

[9] The court discussed the jury's role as fact-finder in the earlier section regarding prosecutorial misconduct.

reasonable doubt; indeed speculation is not even sufficient to establish proof by a preponderance of

the evidence. *Galloway v. United States*, 319 U.S. 372, 63 S.Ct. 1077 (1943). "[T]he essential

requirement [for competent proof] is that mere speculation be not allowed to do duty for probative

facts, after making due allowance for all reasonably possible inferences favoring the party whose case

is attacked." *Id.* at 395.

     As set forth above, "where the state appellate court has conducted a thorough review of the

evidence . . . its determination is entitled to great deference." *Callins*, 998 F.2d 269, 276 (5th Cir.

1993). Mr. Maggett's challenge to the sufficiency of the evidence rests primarily on discrepancies in

the testimony of two State witnesses, Chatman and Anderson. He argues that, due to these

inconsistencies, the State lacked evidence with which to convict him for capital murder. *See* ECF doc.

2, pp. 73-85. Maggett also argues that the Mississippi Supreme Court was faced with a similar issue

in *Flanagan*. *Flanagan v. State*, 605 So. 2d 753 (Miss. 1992). *Id.*

     As discussed in detail above, the Mississippi Court of Appeals reviewed the evidence

introduced against Maggett at trial, particularly Chatman and Anderson's testimony, including their

differing versions of events. The Mississippi Court of Appeals thoroughly discussed Maggett's

challenge to the sufficiency of the evidence regarding the testimony of these two witnesses, ultimately

finding:

> [w]e have previously observed that there is no Mississippi caselaw to support
> the contention that one accomplice cannot corroborate another, *Hendrix v.
> State*, 957 So. 3d 1023, 1028 (¶ 9) (Miss. Ct. App. 2007); but the State seems
> to accept that accomplices cannot corroborate one another, and so we assume
> that for the purposes of our analysis.

*Maggett,* 230 So. 3d at 729-30.

     While the appellate court could not find the accomplice testimony to be corroborated, the

court found that, in light of the cautionary jury instruction given and the jury's vote to convict, the

question on appeal was "whether the accomplice testimony was so 'unreasonable, self-contradictory, or substantially impeached' that a properly instructed jury could not find it sufficient to sustain a conviction." *Id.*, citing *Cowart v. State*, 178 So.3d 651, 667 (Miss. 2015). As the court noted, while the accounts did contradict each other on some of the details, they were not self-contradictory. *Id.* "These disputes between the two witnesses presented a question of credibility for the jury, and our standard of review does not permit this Court to substitute our judgment for that of the jury on the question of credibility." *Id.* The Mississippi Court of Appeals concluded that, regarding Chatman and Anderson, they were

> thoroughly cross-examined on their initial denials and on the inconsistencies between their testimonies at trial. The jury was also properly instructed that it should view the testimony of accomplices with 'great care and caution,' and it still elected to convict. We cannot find the convictions here to be unsupported by sufficient evidence.

*Id* at 731. The Mississippi Court of Appeals properly deferred to the jury's role as finder of fact. Mr. Maggett has thus not overcome the deference this court must afford to the state appellate court, and this ground for relief is without merit.

The Mississippi Court of Appeals is presumed to have determined the facts reasonably, and it is the petitioner's burden to prove otherwise with clear and convincing evidence. *See Miller*, *supra*; *see also* 28 U.S.C. § 2254(e)(1). In this case, the Mississippi Court of Appeals did not incorrectly or unreasonably apply clearly established federal law, and Maggett has not proved otherwise. *See Williams v. Taylor, supra*. For these reasons, Maggett is not entitled to federal *habeas corpus* relief on his claims in Ground Nine of the instant petition regarding the sufficiency of the evidence.

## Ground Eleven: Severance[10]

In Ground Eleven, Maggett argues that "[t]he trial court committed reversible error in overruling [his] pre-trial motion for severance of parties and severance of counts." *See* ECF doc. 1., p. 42. The Mississippi Court of Appeals outlined the denial of Maggett's motions to sever:

> ¶ 10. Stewart and Maggett next contend that the trial court erred in denying their motions to sever the trials based on retroactive misjoinder, as they were charged with felony murder and being in possession of a firearm after a felony conviction. This argument fails because the doctrine of retroactive misjoinder can only apply when one of the counts has been vacated or otherwise found to be invalid, and the appealing defendant was prejudiced by being tried on the supported and unsupported allegations together. *See Williams v. State*, 37 So.3d 717, 725–26 (¶ 25) (Miss. Ct. App. 2010). That did not occur here, as we affirm both counts for all of the defendants.

*Maggett*, 230 So. 3d at 727, *see also United States v. Arledge*, 553 F.3d 881, 895 (5th Cir. 2008) (discussing retroactive misjoinder (also called spillover prejudice)).[11] Spillover prejudice occurs when evidence presented to the jury from a count that was later dismissed or vacated would not be admissible to prove the remaining counts. *Arledge, supra*. The inadmissible evidence thus "spills over" from the dismissed or vacated counts to the remaining counts and potentially prejudices the jury against the defense. *Id*. The Mississippi Court of Appeals found that the trial court did not abuse its discretion in denying the motions to sever. As all of the counts of the guilty verdicts were affirmed, retroactive misjoinder does not apply in the instant case. Thus, the state court's decision was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. In addition, Maggett has not shown that the state court decision was an unreasonable determination of the facts in light of the evidence presented.

---

[10] Maggett's claim in Ground Eleven includes one paragraph and is devoid of argument. He simply states the allegation and its procedural history within the Mississippi Court of Appeals. The court has liberally construed this claim and discussed it as fully as possible, given the paucity of detail.

[11] Maggett did not raise this issue in his Petition for Post-Conviction Relief, but in his direct appeal in the Mississippi Court of Appeals.

*See Williams v. Taylor, supra.* Maggett is not entitled to federal *habeas corpus* relief on his claims in Ground Eleven of the instant Petition.

## Ground Twelve: Cumulative Effect

In Ground Twelve, Maggett argues that "[t]he cumulative effect of the numerous instances of prosecutorial misconduct along with the trial court's errors, augmented by trial counsel's deficient performance throughout Maggett's trial, rendered Maggett's trial fundamentally unfair." *See* ECF doc. 1, p. 43. Cumulative error can be an independent basis for *habeas corpus* relief, but only where:

> (1) the individual errors involved matters of constitutional dimensions rather than mere violations of state law; (2) the errors were not procedurally defaulted for *habeas* purposes; and (3) the errors "so infected the entire trial that the resulting conviction violates due process."

*Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996) (*citing Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992)). In evaluating the sufficiency of a cumulative error charge, meritless claims or claims that are not prejudicial cannot be aggregated, regardless of their number. *Derden*, 978 F.2d at 1461. As set forth above, none of the petitioner's claims has merit; as such, his claim of cumulative error is also without merit. He has not shown that errors, capable of review, have aggregated to cast doubt upon whether the verdict satisfied due process. An aggregation of non-errors does not rise to the level of an error.

The state appellate court's resolution of the issue in Ground Twelve was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. In addition, the decision was not based on an unreasonable determination of the facts in light of the evidence. As such, Maggett is not entitled to federal *habeas corpus* relief on his claim in Ground Twelve of the instant petition.

- 35 -

**Conclusion**

Section 2254(d) requires deference to state court decisions as to claims adjudicated on the merits.  Under AEDPA, a federal court will not disturb a state court's application of law to facts unless the state court's decision was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court.  Upon review of the state courts' findings as to all grounds raised in the instant petition, the state appellate courts' denial of Maggett's claims did not "result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" nor courts determine the facts reasonably in light of the evidence presented.  *See* 28 U.S.C. § 2254(d)(1); *see also Gachot v. Stalder*, 298 F.3d 414, 421 (5th Cir. 2002).  As such, Maggett is not entitled to *habeas corpus* relief based on his claims in the instant petition.

For the reasons set forth above, the instant petition for a writ of *habeas corpus* will be denied. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 24th day of August, 2022.

/s/ Sharion Aycock
U. S. DISTRICT JUDGE